Okay, Mr. Nicholas Markey, and we've got this case set for just 10 minutes per side, so please choose your words appropriately. I will, Your Honor. Your Honor, we would reserve one minute if we require rebuttal. Okay. Your Honor, Your Honors, Nicholas Markey on behalf of Medhanie Techley. This is a petition for review that comes from the Board of Immigration Appeals' denial of a motion to reopen. Mr. Techley was ordered or granted voluntary departure back in 2006. He took it up on appeal with his mother's case in 2009. A petition for review to this court affirmed the decision of the BIA dismissing the appeal in a two-page decision. In August 2014, we filed a motion to reopen based on changing circumstances. The motion to reopen consisted of approximately 135 pages. It consisted of a declaration from an expert, consisted of additional information on changed country conditions in Eritrea. Specifically, the expert had indicated three reasons, one being that Mr. Techley was now of military age and he did not apply to the military in his country of Eritrea. At the time of his removal proceedings, he was a minor, started when he was 9 years old. By the time there was a decision, he was 16. At the removal stage before the immigration judge, the judge had Mr. Techley file his own asylum application also. How old was he when he did that? 16, Your Honor. 16 at that time? Yes, and then he went up through the system. By the time this court denied in 2009, he was over 21. So he wouldn't have been required to serve at 16? No, he is required to serve as an adult in his army in Eritrea. So he still would have been required to serve if he returned back to his country. And he wouldn't have served because he didn't register for the military service. And the expert opinion indicated that that was one reason. Counsel? Yes, Your Honor. Counsel, I'm sorry to interrupt. But, so he was always exposed to that persecution in each of the appearances before the IJ or BIA, right? No, Your Honor. When he applied, he applied as a derivative through his mother's application when he was... Okay, but when he was 16 onward. Well, when he was 16 is when the IJ had him file his own independent application of 589. Yeah. So he wouldn't have been subject to the military condition until after he had his individual hearing with the immigration judge. Because at the time that his individual hearing was conducted, he was a derivative off of his mother's application that was filed, I believe, in 1997. So he wouldn't have been subject to any military conscription at the time that he was in front of the IJ when the evidentiary hearing would have come about. Now, that's in 2014. We filed a motion to reopen, not only for the military basis, but in that the country conditions had changed and gotten worse. We cited examples. We cited two State reports. But the expert also said that. In the first hearing, there was also an expert declaration, correct? That's correct, Your Honor. But that was back with the mother's application when he was... That was only submitted in connection with the mother's application and not with... That's correct, Your Honor. So the IJ did not consider it when he was ruling on your clients? At the time that Mr. Techley's case was proceeding before the IJ, he was a derivative off of his mother's. Understood. You've said that. I understand that. But he eventually filed his own application. My question to you is, at the time the IJ considered his own individual application, did he consider the affidavit that was presented at that time? In his denial of the mother's application, which carried over to Mr. Techley's application. So he considered it in case of the mother's case because, if the Court remembers, Mr. Techley and his mother appealed to the BIA the denial of the asylum application, and that went to the Ninth Circuit. She was granted adjustment of status off of that. So the expert opinion did not address Mr. Techley other than he was a derivative. So there was never any discussion about military service or anything like that in the underlying hearing before the IJ. So when we get to the BIA with the motion to reopen, as the Court can see, we get a paragraph and maybe a quarter of a decision denying it. We don't have any facts on what the BIA relied on to deny it, other than to say that the information was not sufficient to reflect that there's a reasonable possibility  But there's nothing behind that to say what it is. It's a conclusion. This Court has routinely said boilerplate decisions are not sufficient to sustain a decision and they're arbitrary. Here, the BIA, again, in a paragraph dismisses this motion to reopen. It doesn't – all it says is we've reviewed the expert report and the evidence.      But it is a decision. It's not a military decision. And the point of the argument the government makes is that this – he has failed to show a prima facie case of persecution – of likelihood or potential of persecution on the basis of a protected – on account of a protected ground. How do you respond to that? He has, Your Honor. Because he is – I'm sorry? He has. He has. Because he's made a prima facie case that he will be persecuted on one of the protected grounds, that being that he's not within the military service. Is that a political – but that's not – if you look at the protected grounds, that's not listed as a protected ground. It's a social group or a political or race or ethnicity? One might say it would be political, Your Honor. Religion? One might say it could be political. One might say it could be social. Well, I'm asking you, what is it? Both. That's what we say. He's not supporting the military by being involved in the military, and he's subject to being persecuted because of that. But we can't even address that because the BIA doesn't give us any facts to rely to argue against it. So if the case is reopened – Yes. – you need to go before the IJ and present – and you're going to argue he's being – he'll be – if he goes back to Eritrea, he will be persecuted on account of? Failure to register for the military, Your Honor. Because that is? A political situation, Your Honor. Because it's required by the policy of the political aid government to register for the military. And when you don't register for the military – It's viewed as what? If you don't – it's viewed as you're persecuted because you didn't apply to the military. At least that's what the expert seems to indicate. Is it viewed as an imputed political opinion that he doesn't support the government? Yes, Your Honor. I would agree that – I would say it could be an imputed political opinion because he's not supporting the government. If you remember, the mother's prior application that was denied was, in part, political opinion based on her husband's involvement and that they didn't support the government when the dictator was removed. Are you also saying that there's a protected social group of people eligible or required to serve in the military who haven't done that? You can argue that there is a protected group in those who have not registered for the military. Another group that is addressed by the expert is returnees from the country who were not raised in Eritrea are subject to persecution. The expert also addresses that. How can he register for the military there if he's over here? He can't register for the military if he's over here. And what we're saying is because he didn't register for the military, he will be persecuted there upon return. If the court is saying, well, you've got to step forward and do something affirmatively to take this path, we can't even get there because the BIA – I'm not saying anything. I'm just asking you a question. And what I'm saying is, Your Honor, we're reviewing the BIA decision for an abuse of discretion and we can't even go there because they didn't give any factual basis in when they denied the application or the motion to reopen. That's our primary argument is they didn't look at the expert opinion. They didn't look at the country conditions that were added to it. They didn't look at the information that was provided when we filed the motion to reopen. They just issued a one-line saying he did not – couldn't pass the statute of limitations, the 90 days for filing, and he hadn't established conditions that would get around that, the changing country conditions. There's no decision even on that. And what we're saying is that is an abuse of discretion, and that's why this matter should be remanded. Now, I would like it remanded back to the IJ saying that he's established a prima facie case for relief. The country reports, the experts all say that the changing conditions from 2006 to 2014 are huge, and they've changed since then. Okay, thank you. Mr. Markey, your time is up. But for planning purposes, we'll add a minute for rebuttal after the argument from Mr. Lawrence. May it please the Court, Victor Lawrence on behalf of the Attorney General. This Court should deny this petition for review because the Board acted within its considerable discretion when it denied the petitioner's motion to reopen. As this Court is aware, motions to reopen are particularly disfavored in immigration proceedings, and this Court will only reverse the denial of a motion to reopen if it finds that the Board acted arbitrarily, irrationally, or contrary to law. That's not the case here. Petitioner makes two arguments in his motion to reopen. He says that the conditions have worsened in Eritrea, and that government officials will surmise that he fled to evade military service. My opponent. It doesn't seem, you know, as I read everything here, read the record and whatnot, it didn't strike me as an unreasonable argument, given what's given the conditions in Eritrea. The conditions in Eritrea have not materially changed. They're not qualitatively different. And to prove that point, in our brief, we quoted from the 2003 State Department report and the 2013 State Department report with respect to their conclusions of country conditions in Eritrea. And if you look at that in our brief, they're remarkably similar. There's nothing that's considerably changed. Well, he has the addition of the experts, the expert declaration. Which, again, Your Honor, indicated he had an expert declaration. Yes. I read both of them. And the first one, admittedly, doesn't really seem to focus on this individual, Mr. Techley. Right. It was a little more general, just about conditions in Eritrea at the time. And the main ‑‑ But this one, this current, the expert declaration that he submitted this time, it's pretty substantial, I thought. Well, with respect ‑‑ I mean, it focuses in on serious matters that somebody who's been out of the country for a long time goes back. You know, the Eritrean government is not going to look too favorably upon such people. They didn't serve in the military. This individual also, his family was also associated with Ethiopia. But you mean Eritrea, I believe. Well, his family, his mother worked for the Ethiopian government. His mother worked for the Ethiopian government. Correct. Now, here's the difference, though. The second expert report, the main focus that he said that was where there were material changes with respect to the individual, Mr. Techley, had to do with the fact that he evaded military service and that the country doesn't treat people well who evade military service. Now, the difference, though, and my opponent had some of the facts incorrect, he said that Mr. Techley was 16 at the time of his immigration proceedings. He was actually 20. In 2004, he was 20 years old. That's when the immigration proceedings took place. His date of birth was October 1984. That could be found on page 572 of the record. But also, during that time, during the original removal proceedings, he testified himself before the immigration judge that he feared going back because he had evaded military service. This isn't a change. He said that in 2004. Now he's saying that again later. He was 20 years old in 2004 at page 131 and 132 of the record. That's where he says that he feared going back as a result of the fact that he would have to serve in the Eritrean military. So there's no change there at all. So his expert saying that, oh, it's going to be different now because he's no longer a minor, is not supported by the record. Well, I thought the expert's statement was just a little bit different than that, if I remember correctly. Hold on a second here. I don't remember. Well, let me point out one thing that's relevant to this discussion, though. Also at page 557 of the record, 557, that's part of the country report that says that all men between the ages of 18 and 45 were required to participate in the National Service Program. So in 2004, when he was 20, he was already evading military service. He wasn't 16 pursuant to the record. Again, that's at page 572. He was 20, and he was already subject to military service at that time. So he had already evaded it, and he had the chance to bring this to the immigration judge's attention then in 2004. And now they're acting like it's a new claim that they're bringing 10 years later. It's not. It was completely addressed at the immigration proceedings initially, which he took not only to the immigration court but to the board and to this court, which denied his petition for review. I thought what was different here was that conditions now have changed in Eritrea, such that a person like Mr. Eckley, who's been out of the country for many years, who did not serve in the military when he should have, who comes from a family that is associated with the Ethiopian side, are considered, I don't want to say enemies, but are discriminated. They're persecuted by the Eritrean government. That's what he says. But that was the case in 2004 as well. All those same facts were brought before the immigration court at that time. The fact that he had evaded service, that was brought before the immigration court in 2004, and all the facts about his mother's participation in politics in Ethiopia was brought before the immigration court. Right, but it didn't have the flavor that this current affidavit does. Yes, but we don't, the court shouldn't be making decisions because he submitted a more robust. Well, who actually submitted that first affidavit? Is he correct? Is counsel correct that it was submitted on behalf, because his mother was initially applying for asylum and adjustment of status. Yes. Right? Yes. So did that affidavit go in in support of that application? To which Mr. Techley was a derivative of that claim. Right. Now, whether or not that was also brought in as individual proceedings, I'm not certain. But I don't think it matters. It was in the record at the time. That declaration was in the record. So it doesn't really matter whose proceedings, because it was all considered with respect to his claim. But the principal point is the new expert declaration doesn't raise anything different, not materially different. And on the prima facie question, Your Honor, the board only found that he hadn't shown a prima facie case with respect to his claim for the convention against torture. And that has to do with acquiescence or did the people acquiesce in his torture. So, no, this new claim doesn't present any evidence towards that. What the board said, they showed nothing that would indicate that Mr. Techley would be targeted that hasn't been brought before in his original asylum claim in 2004. And that's absolutely accurate. There's no material change in conditions, and there's no individualized relevancy to what his new expert is saying that's any different than he brought before the immigration court in 2004. At that time, he had his own position, right? He wasn't just a derivative or was he still a derivative? In 2004? Well, in 2004, he testified on his own behalf. And that's for his own claim of asylum. And, again, I refer to court to page 131 and 132, where he indicates that he knew people that went back at that time who were given a hard time, he said, because they didn't do their national service. And he indicates that he was feared and that he could go to jail at that time in 2004 because he had fled. He could be considered to have evaded military service. He's in the exact same position. That's when he was 20 years old. Now he's 37 years old. But, again, pursuant to the record at page 557, they recruit people starting at the age of 18. So he was just as guilty of evading service when he was 20 years old in 2004 as he is now at age 37. Okay. Mr. Larkin, how do you answer your opponent's argument that the summary nature of the board's denial of rehearing is too scant, too short, too terse, you know? What? That it doesn't say all the things that you're explaining. Well, I think it does say all the things I'm explaining. But, first, this Court has said that there's no reason for the BIA to write an exegesis on every single contention that's raised by the petitioner. But what the board's decision does here is it addresses every single claim that he made. Yes, it's a short opinion. But, again, there's no requirement of how long an opinion has to be to address the issues. But the principal things that the board's decision points out is that there are no materially changed circumstances, which is supported by the record, as I've indicated. I cited from the State Department report in 2003 and in 2013, and they're almost identical. And, number two, it says there's no reasonable possibility that Mr. Tekle would be targeted, that he's shown any individualized relevancy to a claim. And this Court's decision in the Najma body puts a high premium on showing individual relevancy. How is it relevant to his claim that these conditions have changed? And he hasn't shown that. Now, when we talk about political opinion, Your Honor, raise that with respect to, you indicated as well, is there an imputed political opinion? This is different than the case in INS versus Ramos-Vazquez, where this Court found that there was an imputed political opinion as a result of somebody evading military service. But that's somebody who actually indicated on the record that he had a conscientious objection to fighting in the military. And that's why the Court indicated there was an imputed political opinion. The fact that this guy, this individual, this alien, has not indicated anything of a conscientious objection to participating in the military, he just indicated that he didn't want to participate in the military. There's no particular social group or political opinion that's been addressed with any degree of sufficiency to find that he's established a prima facie case for asylum that he didn't have previously in 2004. Okay, thank you. Counsel, could I ask a question about the cat? It says in the order of the BIA, does not make a prima facie showing that the government of Eritrea would torture or acquiesce in torture. The expert opinion recounts all the things the government has done to torture returning people. So the fact that they're acquiescing is irrelevant since they're doing it. So why does that not make that a prima facie case? Well, I think the Court has to look at the actual motion to reopen that was filed between pages 479 and 489 of the record. There's nothing that's indicated in the text of that motion to reopen that indicates that he now has a claim under the Convention Against Torture. So when the BIA is reviewing this motion to reopen and they're saying, okay, where is he saying anything about the Convention Against Torture, which those words don't even appear in the motion to reopen. So the fact that the expert may have said something in the 180 pages of materials that they provided to the board is not really relevant when their own counsel hasn't even brought it to the Court's attention in the 10-page motion to reopen. Okay. Well, you're over time. So thank you, Your Honor, and we respectfully request that the Court deny. We've been asking you a lot of questions, so I appreciate your answers. My pleasure. Okay. Mr. Markey. Very briefly, Your Honor. I think this Court has touched on the fact that the government seems to argue what the BIA should have done when they issued this decision, and they didn't. They give us no factual basis to support their decision. There's no reasonable articulation for the decision in this case.  Thank you, Your Honor. What would be the best case from our circuit that would say that a more elaborate statement of reasons is required? TATASVAN, Your Honor, T-A-D-E-V-O-S-A-Y-A-N-V, Holder, 743 Fed 135, 9th Circuit, 2014, was the motion to reopen where the BIA did not address any of the factual basis of it and still denied it. Okay, thank you. Thank you, Your Honor. Excuse me, counsel. Judge Fischer. Counsel. Yes, Your Honor. Do you disagree that you didn't make a CAT claim? Yes, Your Honor. I believe we did make a CAT claim through the expert opinions testimony, or his opinion letter, because he directly addressed the issue. This was not said in the motion itself. It would have been implied through the motion of the expert opinions letter, Your Honor, that he was eligible for CAT and that the matter should have been reopened. All right. Thank you. Thank you, Mr. Lawrence. Mr. Markey, we appreciate your arguments. We will submit the Techley case.
judges: Fisher, Gould, Paez